CHARLES A. WIMPFHEIMER and FREDERICK C. GOLDSMITH, Copartners Doing Business under the [Firm Name and Style of A. WIMPFHEIMER AND BROTHERS, Respondents, *v.* THE CITY OF NEW YORK, Appellant, Impleaded with NEW YORK EDISON COMPANY and Others, Defendants.

First Department, July 11, 1918.

Municipal corporations — city of New York — negligence — damage resulting from leak in water main — pipes constituting main and not service pipes — when doctrine of res ipsa loquitur not applicable — city not bound to maintain constant patrol and inspection of water pipes.

In an action by merchants engaged in business in the city of New York at Thirty-first street and Fourth avenue, for damage to goods from water, it appeared that upon taking up the sidewalk water was found flowing in from a pipe running parallel with the building line and located under the sidewalk at a point about three feet east of the house line, which pipe had been plugged. The city claimed that said plug was not inserted in the main itself, which ran parallel with the premises, but in a plug iron pipe extending one and one-half inches westerly from the main and designed to permit a service pipe to be connected.

*Held,* on all the evidence, that the defendant city cannot escape liability upon the ground that said pipes were service pipes; that the facts are insufficient to sustain a finding of negligence against the city.

Proof on the part of the plaintiff that the service pipes from the main had been properly closed to the knowledge of the water supply department, and if any of them were thereafter opened and improperly closed it was without the city's knowledge, prevents the application of the doctrine of *res ipsa loquitur.*

The water supply department of the city of New York is not required to maintain a constant patrol and inspection of the city water pipes in order to prevent some person from unlawfully cutting off service pipes and plugging them without permission.

APPEAL by the defendant, The City of New York, from a judgment of the Supreme Court in favor of the plaintiffs, entered in the office of the clerk of the county of New York on the 9th day of June, 1917, upon the verdict of a jury, and also from an order entered in said clerk's office on the 6th day of June, 1917, denying defendant's motion for a new trial made upon the minutes.

*John F. O'Brien* of counsel [*Terence Farley* and *Thomas G. Price* with him on the brief; *William P. Burr, Corporation Counsel*], for the appellant.

*Joseph M. Proskauer* of counsel [*Samuel Kramer* with him on the brief; *Elkus, Gleason & Proskauer*, attorneys], for the respondents.

SHEARN, J.:

The plaintiffs were velvet merchants engaged in business on the southwest corner of Thirty-first street and Fourth avenue, New York city. During the night of August 10, 1915, a heavy flow of water came into their premises from the sidewalk through the walls. The sidewalk was immediately dug up and it was found that the water was flowing in from a pipe running parallel with the building line and located under the sidewalk at a point about three feet east of the house line. A photograph of this pipe is reproduced in the record, showing the pipe after a plug was put in it the night of August tenth. The city devotes much effort to showing that this plug was not inserted in the main itself, which ran parallel with the premises, but in a plug iron pipe extending an inch and a half westerly from the main, designed to permit a service pipe to be connected with the main. The city contends that this inch and a half excrescence was a service pipe and that, therefore, the plaintiff cannot recover, for no obligation rested on the city to take care of service pipes. This contention does not commend itself. In the *first* place, there was no service pipe running into the premises from this plug, and *secondly*, it was obviously intended for nothing but a connection with the four-inch pipe or main and was, in effect, a part of the four-inch pipe or main. If there was a leak in this plug or excrescence it was the same thing and properly considered as a leak in the

pipe or main. There was evidence from which it might be inferred, although the evidence was slight, that this connection had been plugged with concrete instead of with brass as is usual and that this was improper plugging as shown by the fact that it was not the customary or usual plugging and that the concrete gradually wore away.

The city further contends that the four-inch pipe was a service pipe and not a city main and that, therefore, plaintiffs could not recover. This was submitted to the jury and the pipe was found by the jury to be a main. That it was a main there can be no serious question. It appears that the houses on the west side of Fourth avenue between Thirty-first and Thirtieth streets were originally supplied by means of five-eighths-inch service pipes connecting with a six-inch main which ran under the bed of Fourth avenue. In 1906, when the subway was constructed, it became necessary to make changes, and a contract was entered into between the board of rapid transit railroad commissioners, McDonald and the Interborough to construct ventilating chambers for the subway at numerous points along the route, among others at Fourth avenue just south of Thirty-first street. This made it impossible to continue the small service pipes from the six-inch main into the premises, and the situation was relieved by running a four-inch by-pass pipe to the west of the chamber, connecting with the six-inch main north and south of the ventilating chamber. This four-inch pipe or main was the one above referred to, and new service pipes were run into the various buildings between Thirty-first and Thirtieth streets from this four-inch pipe. All the houses on the block were thus supplied and it seems perfectly obvious that this four-inch pipe was, as the jury found, a city main.

The new taps into the four-inch pipe were placed by a plumber under an application duly filed on July 31, 1906. During the years 1910 and 1911 the old buildings Nos. 450 to 460 Fourth avenue, inclusive, on the block between Thirtieth and Thirty-first streets, were demolished and a new building constructed consisting of the corner building and the annex. On September 24, 1910, the old buildings had been demolished and excavation for the new corner building was in progress. At that time a one and one-half-inch service pipe was laid

bare thirty-eight feet six inches north from the south house line of No. 456, attached to the four-inch pipe and evidently used to supply No. 458. On November 15, 1910, certain other service pipes five-eighths-inch to three-quarter-inch, made of lead, were disclosed about two or three feet outside the building line. These were four service pipes which had been cut off from the old buildings. They were attached to the four-inch pipe and when they were cut off they had been turned several times at the ends, bent over and hammered up, so that they would not leak. It does not appear by whom these pipes were turned up and hammered, and there was no application for permission to do this on file, although all such plugging must be done under the supervision of the department of water supply, and it is customary to obtain a permit. It does not appear that the department exercised any supervision over this four-inch pipe or watched what was being done when these pipes were closed, for, although it was customary for the city to place every main on water supply maps, this four-inch main was not so placed and was evidently not regarded by the water supply department as a main, but, for some reason, as a service pipe. It does appear, however, that the contractors who built the annex, which was at least fifty-six feet south of the corner of Thirty-first street, used some of the service pipes for water during the construction. In order to do so, of course they had to be opened, and the evidence suggests the inference that someone connected with the demolition and reconstruction used these hammered-up and closed pipes in 1911 and thereafter improperly plugged the one that caused the damage to plaintiffs in 1915. There is no permit on record subsequent to 1911 affecting the tapping or plugging of any of these service pipes and there is not a particle of evidence in the record that the city had anything to do with either the original or any subsequent plugging. Upon these facts plaintiffs claim that the jury were authorized to and did draw the following inferences: (a) That the city had authorized and approved the furnishing of water to the block in question from the four-inch pipe. (b) That it had failed to exercise any supervision whatever over this pipe. (c) That in point

of fact the pipe had been improperly plugged. (d) That there was a leak in it which damaged the plaintiffs. (e) That there was no explanation or excuse whatever offered by the city for allowing this leak in a water main, in a public street, installed under the supervision of the water department and for allowing it to remain in the public street. I can see in the foregoing no sufficient basis for a finding of negligence against the city. Plaintiffs claim that the doctrine of *res ipsa loquitur* applies. It may be that, if the proof were that there had been an application to the department to cut off and plug these service pipes, and that one of them was improperly plugged with concrete, and thereafter leaked causing damage, negligence might be inferred from these circumstances and the city be called upon for an explanation, for it would then be shown to have had notice of interference with the supply that was under its control and supervision and it would be its duty to see that it was done properly. But the department is not required to maintain a patrol along all the miles of city water pipes in order to prevent some person from unlawfully cutting off service pipes and plugging them up without permission. The only proof tending to put the city on notice was that on May 17, 1911, an application was granted by the department to a plumber named MacLean for permission to tap the six-inch main in Thirty-first street to connect the premises at the southwest corner of Thirty-first street and Fourth avenue with the main by means of a two-inch tap, the permit requiring that " 5 old taps to be drawn at main and plugged; one old tap to be used if metered." It might be said that this drew the department's attention to the vicinity and should have put it on notice that in all probability the service from the Fourth avenue side had been cut off and that it, therefore, ought to have inspected and determined whether everything had been properly plugged. This proof might possibly constitute a *prima facie* case under the *res ipsa loquitur* rule if it were not for the fact brought out in the plaintiffs' case that the service pipes from the four-inch main had been properly hammered up and closed to the knowledge of the water supply department and if any of them were thereafter opened and improperly closed, it was without the city's knowledge. This,

as it seems to me, prevents the application of the *res ipsa loquitur* rule (assuming that it can be invoked in such a case), because the evidence does not definitely place responsibility on the city but leaves open the inference that the connections with the four-inch main, which the city's inspector found closed and hammered up in November, 1910, were thereafter opened by unauthorized persons without its knowledge and improperly plugged. Therefore, unless it is to be held that there is a duty of constant patrol and inspection on the part of the city, which would be most unreasonable, there was no sufficient legal basis for the finding of negligence, and the judgment and order should be reversed and a new trial ordered, with costs to appellant to abide the event.

CLARKE, P. J., LAUGHLIN, SMITH and PAGE, JJ., concurred.

Judgment and order reversed and new trial ordered, with costs to appellant to abide event.