Argued July 11, affirmed December 31, 1974

BERNARD, *Respondent, v.* NATIONAL
GUARANTY INSURANCE COMPANY, *Appellant.*

530 P2d 74

*James C. Tait,* Oregon City, argued the cause for
appellant. With him on the brief were Frederic D.

Canning, and Hibbard, Caldwell, Canning, Bowerman & Schultz, Oregon City.

*Carl N. Byers,* Salem, argued the cause for respondent. On the brief were Heltzel & Byers, Salem.

BRYSON, J.

Plaintiff, a dentist, brought this action, on a malpractice insurance policy issued by defendant, to recover money he paid to satisfy a judgment against him for malpractice. The jury returned a verdict in favor of plaintiff and judgment was entered accordingly. The defendant appeals.

The defendant assigns as error the court's denial of defendant's motions for involuntary nonsuit and a directed verdict. The insurance policy provided:

"1. It is a condition precedent to the right of the Assured to be indemnified under this Insurance

"(a) that the Assured, upon knowledge of any occurrence likely to give rise to a claim hereunder,

shall give immediate written advice thereof to the person(s) named for the purpose in this Schedule;

"* * * * * *"

The defendant contends that plaintiff failed to prove that he gave notice to the defendant of the claim for malpractice by one Myrtle Gritz in accordance with the above condition precedent. The malpractice claim of Mrs. Gritz against plaintiff resulted in the judgment against plaintiff which defendant refused to pay.

Thus, the question raised is whether plaintiff complied with the notice provision of the policy or whether the evidence shows a reasonable excuse on plaintiff's

part. The defendant questions only the timeliness of plaintiff's notice. The defendant admits that on or about December 2, 1971, plaintiff was served a summons to appear in the case of Myrtle L. Gritz v. Dr. Lawrence Bernard, et al, and that plaintiff forthwith notified defendant's designated agent for service of said action and on December 8, 1971, delivered copies of the summons and complaint to the agent.

"The burden of proving an excuse for a failure to give the required notice rests upon the insured. And generally the sufficiency of the excuse proffered is a question of fact for the jury to determine. But if the facts are undisputed and the only question concerns the breach of the policy, it may then, but not always, become a question of law for determination by the court." 8 Appleman, Insurance Law and Practice § 4746 (1962).

■ "What is a reasonable time depends upon the circumstances of each particular case and, ordinarily, the question whether required notice has been given within a reasonable time is a question of fact for the jury, having due regard to the nature and circumstances of the case." *Hoffman v. Employer's Liability Corp.*, 146 Or 66, 80, 29 P2d 557 (1934).

It is necessary that we review the evidence, bearing in mind that defendant's motions admit the truth of plaintiff's competent evidence and of every inference of fact that can be reasonably drawn therefrom; and that we view the evidence in the light most favorable to the plaintiff. *Scott v. Mercer Steel/Edwards Realty*, 263 Or 464, 467, 503 P2d 1242 (1972) ; *Pakos v. Clark*, 253 Or 113, 116, 453 P2d 682 (1969).

Most of the evidence adduced at the trial was focused on the events leading up to the filing by Myrtle Gritz of her action against plaintiff for malpractice.

On March 27, 1971, plaintiff, through his associate-employee, Dr. Kaufman, examined and extracted all of Myrtle Gritz's 19 remaining teeth and thereafter fit her with dentures. Mrs. Gritz suffered unusual ecchymosis as a result of the extractions. An acquaintance of Mrs. Gritz referred her to Dr. Hart, a dentist at Fairview Hospital and Training Center. After he examined her, Dr. Hart filed a complaint against Dr. Bernard and his employee, Dr. Kaufman, with the Board of Dental Examiners. The evidence is not clear as to the nature of the complaint.

Dr. Engstrom, associate of plaintiff and manager of the office where Dr. Kaufman had extracted Mrs. Gritz's teeth, was aware of the complaint by April 7, 1971. On April 7 Mrs. Gritz returned to plaintiff's office, at which time Dr. Engstrom informed her that a complaint had been filed with the Board. Mrs. Gritz denied filing the complaint and stated that she did not know who filed the complaint. Dr. Engstrom asked her if she would write a letter to him relating to the substance of their discussion and whether or not she had any complaints and to bring it to him in the morning; Mrs. Gritz stated that she would. However, she did not return with the letter, and that was the last time she was in the plaintiff's office. Her sutures were removed by Dr. Hart. Dr. Engstrom testified there were several purposes for obtaining the letter, such as (a) its use against the complaint filed by Dr. Hart with the Board; (b) its possible use against Dr. Hart personally (Dr. Engstrom filed a complaint with the State Board of Dental Examiners against Dr. Hart); and (c) its possible use as a defense in a malpractice action if one was to arise. The defendant contends that this evidence proves that plaintiff at that

time had knowledge that a malpractice action was likely to arise.

Dr. Engstrom also testified:

"A * * * [W]e have had trouble with Dr. Hart and I didn't correlate Mrs. Gritz with any intentions of dissatisfaction.

"* * * * *.

"Q * * * Okay. Dr. Engstrom, as I understand your testimony then, you are saying that so far as you knew, until Mrs. Gritz actually sued and filed suit, you thought she was friendly towards you?

"A Correct. I anticipated one from Dr. Hart but not Myrtle Gritz."

On June 16, 1971, the Oregon State Board of Dental Examiners held a meeting regarding the complaint of Dr. Hart, which was attended by Drs. Bernard, Engstrom and Kaufman. The secretary of the Board was directed to get a statement from Mrs. Gritz. Someone in the office of the Board of Dental Examiners took her next door to an attorney's office and she subsequently filed her complaint against the plaintiff for malpractice. The malpractice action against plaintiff was filed on or about December 2, 1971, and there is evidence that the plaintiff was not advised of the malpractice action until served with a complaint and summons. On September 29, 1971, following the meeting of the State Dental Board on June 16, 1971, the Oregon State Board of Dental Examiners advised Dr. Kaufman as follows:

"After extensive review of the Myrtle Gritz complaint, the Board of Dental Examiners believes a violation of the Dental Practice Act has not been established. * * *"

On redirect examination Dr. Engstrom testified as follows:

"Q * * * Dr. Engstrom, relative to April 7th when Mrs. Gritz was in your office and discussing with you the situation with this complaint made by Dr. Hart, did you believe at that time that she was dissatisfied with the services?

"A    Absolutely not. She gave no indication.

"Q    Did she express satisfaction with the services?

"A    She was satisfied with her services and repeatedly told us how friendly we were and how well we treated her.

"Q    Did you believe it was likely that she would file a claim against you?

"A    It was the furtherest [sic] thing from my mind."

We have examined all of the testimony. The foregoing is a very condensed statement of facts from the some 11 witnesses who were called to testify.

In arguing the motion for directed verdict before the trial judge, the following statement was made:

"Under all of the circumstances, I submit that the Court is required to rule as a matter of law that the condition precedent in the Errors and Omissions Policy issued by the defendant has not been met, and that there is no coverage in this case.

"* * * There's nothing upon which the jury can consider, they can't reach any other conclusion but that the plaintiff failed to comply with the conditions of the policy."

The court, on ruling on the motions for nonsuit, stated:

"* * * I frankly feel that I can not rule as a matter of law that the insured had knowledge of an occurrence which was likely to give rise to a claim.

The insured had knowledge of an incident that occurred with a patient but I don't think, as a matter of law, this means this was likely to give rise to a claim in view of specific evidence of that potential claim and it did not indicate a desire for or an intention to make a claim. * * * I think that the jury could conclude on the evidence that is presently before it that the insured, as a reasonable insured, would not anticipate the filing or the making of a claim under this evidence."

■ There was considerable contradicting evidence submitted in the trial of the case. However, we view the evidence in the light most favorable to the plaintiff. The jury could have found from the evidence that the plaintiff had no knowledge of any occurrence that was likely to give rise to a claim under the insurance policy until such time as he was served with a complaint and summons. The court did not err in denying defendant's motions and submitting the matter to the jury.

Affirmed.