Argued January 7, affirmed February 13, 1975

# OREGON AUTOMOBILE INSURANCE COMPANY, *Appellant, v.* FITZWATER ET AL, *Respondents.*

531 P2d 894

*John R. Faust, Jr.,* of Hardy, Buttler, McEwen, Weiss & Newman, Portland, argued the cause and filed the briefs for appellant.

*Arthur C. Johnson,* Eugene, argued the cause for respondents Collins. With him on the brief were John E. Frohnmayer and Johnson, Johnson & Harrang, Eugene.

TONGUE, J.

This is an action for declaratory judgment by an insurance company against an attorney to whom

it had issued a policy of malpractice insurance. By its complaint the insurance company alleges that defendant attorney failed to notify it upon becoming aware of facts which might reasonably be expected to be the basis of a claim against him for legal malpractice, as required by provisions of the insurance policy.

Based upon that contention, plaintiff's complaint seeks the entry of a declaratory judgment that its policy did not cover a subsequent claim made against defendant W. Dean Fitzwater for legal malpractice. The case was tried before the court, sitting without a jury. After hearing the testimony the court entered a judgment finding in favor of the defendant, thus holding, in effect, that the claim was covered by the insurance policy. Plaintiff appeals. We affirm.

Plaintiff contends on appeal that the trial court erred, as a matter of law, because "all that is required under the policy is that the insured have notice of facts indicating that it is reasonable to expect that a malpractice claim may be asserted" and that the evidence in this case is conclusive that defendant Fitzwater had notice of such facts and nevertheless did not notify the insurance company.

■ Because such action for a declaratory judgment is an action at law, in reviewing the evidence we must apply the same rules as in a case tried before a jury and in which the jury returned a verdict in favor of the defendant. Cf. *Falk v. Sul America Terrestres,* 255 Or 246, 248, 465 P2d 714 (1970). Thus, for the purposes of this appeal, defendant is entitled to the benefit of all of the facts favorable to him, as well as all reasonable inferences from such facts. Cf.

*Bernard v. National Guaranty Ins. Co.*, 270 Or 827, 530 P2d 74 (1974).

*The facts.*

The insurance policy issued by plaintiff to defendant includes "Special Exclusion" 7, which provides in part as follows:

"Upon the insured becoming aware of any act or omission which might reasonably be expected to be the basis of a claim or suit covered hereby, written notice shall be given * * * as soon as practicable * * *."

Paragraph I of the "Insuring Agreement" provides that the company agrees:

"To pay on behalf of the insured all sums which the insured shall become obligated to pay * * * for damages resulting from any claim made against the insured arising out of the performance of special services for others in the insured's capacity as a lawyer * * *."

The defendant, an attorney in Portland, was approached by two men to organize a corporation for them named Enz-A-Bac, Inc. At that time defendant had done corporate work, but his experience in securities work was limited to the drafting of some notes and bonds or debentures for a nonprofit church corporation which made a "periodic filing" with the Corporation Commissioner.

In August 1968 defendant prepared articles of incorporation and by-laws for the corporation, for which he was paid a fee. He also invested $10,000 in capital and became a stockholder, director and secretary of the corporation. Later, in March 1970, he became its president and remained in that capacity until December 1970, when the corporation ceased doing active business.

Although not specifically engaged and retained by the corporation as its attorney, defendant did some other legal work for the corporation and admitted that it was a "fair statement" that he was both a member of its board of directors and "also their attorney."

"Almost immediately" after the corporation was organized, and for the purpose of providing it with capital, a promissory note for $10,000 was prepared by defendant and by the president of the corporation, a former banker, who then "contacted" persons known to him. That first note, and two other notes, were dated September 1, 1968. Two more notes were issued in November 1968, seven during the year 1969, and one in 1970. It appears that some, if not all, of these notes were issued "with option to convert a portion to stock," but that the last three notes had some different terms. These notes were not registered as securities with the Oregon Corporation Commissioner.

Defendant did not participate in the solicitation of these notes. He did, however, sign "most," but not all of them. It does not appear, however, exactly how many or which notes were prepared or signed by him.

These notes were not paid when due and demands were then made for payment. On September 29, 1970, an action on the first promissory note was filed on behalf of Mr. Collins. The original complaint named the corporation as the sole defendant and was simply an action on the note. In December 1970 the corporation ceased doing active business.

Meanwhile, on March 19, 1970, an attorney representing Jackson Wade and Lucian Whealy, the hold-

ers of two other notes, wrote a demand letter addressed individually to all of the directors of the corporation, including defendant, based upon the contention that the notes were unregistered securities, imposing liability under ORS 59.115 "against the persons responsible for improper issuance of the securities" and stating the understanding "that each of you were directors * * * at the time the notes were issued." At some undisclosed date later in 1970 two complaints were also filed, based upon two notes which were dated April 15, 1969, and signed by defendant as secretary of the corporation, as well as by its president. Copies of these complaints are not in evidence. Other similar actions were also apparently filed on behalf of the holders of other notes.

On February 26, 1971, an amended complaint was filed in the Collins case, naming as additional defendants all of the directors of the corporation, including defendant Fitzwater, and alleging liability based upon the ground that the note to Collins was an unregistered security.

According to the defendant, at some unidentified time he "contacted" the Oregon Corporation Commissioner, who asked that no more notes be issued because they were not registered.

In April 1971 the deposition of defendant Fitzwater was taken in the Collins case. In the course of that deposition Fitzwater was questioned at some length concerning his various assets and, among other things, was asked whether he carried malpractice insurance. The amended complaint in that case also demanded punitive damages. As previously stated, however, the plaintiff in that case was not a client

of Fitzwater and the amended complaint did not allege any malpractice by him as an attorney.

In May 1971 the Wade and Whealy cases came on for trial and were settled on the day of trial. In those cases no demands were made upon Fitzwater based upon claims of malpractice or negligence as an attorney, but those claims against him were made on the same basis as the claims made against the other directors.

The Collins case then apparently went to trial. In that trial defendant Fitzwater testified that he knew that the claims by Wade and Whealy were against him and the other defendants for participating as directors and officers in issuing "these securities" in violation of the Blue Sky Law; that the notes were securities and had not been registered, and that he had a "potential liability" to the holders of other notes in that "the same contention" would be made by them.

It also appears that on December 24, 1971, a judgment was taken against defendant Fitzwater and the other directors, in the Collins case; that default judgments were also entered in the other similar cases, and that such judgments, totaling $63,000, were not paid.

On October 2, 1972, a further complaint was filed against defendant Fitzwater by Collins based upon assignment to Collins by Richard Parker, one of the other directors of the corporation, of a claim by him against Fitzwater for negligence and legal malpractice, as attorney for the corporation, in failing to register the notes and alleging that by reason of such negligence a judgment totaling $63,000 had

been taken against Parker. On the next day defendant Fitzwater sent a copy of that complaint to plaintiff insurance company. This was the first communication by him to it about this matter.

Prior to that time, according to Fitzwater, Parker had never at any time "asserted" that he was "guilty of malpractice in relation to himself" and until then neither "Mr. Parker or anyone else [gave] him 'any information that a malpractice action was going to be filed against him."

*The finding by the trial court was supported by substantial evidence.*

After considering this evidence the trial court, in a written opinion, made the following finding of fact:

"The Lane County claims made against defendant W. Dean Fitzwater related to his actions as a director of Enz-A-Bac, not to his professional conduct. No evidence was adduced to suggest that the Board decision to issue the notes was predicated upon defendant's legal judgment, advice or opinion. Neither was it proved that the attitude of any director was influenced by the knowledge that defendant, a lawyer acquiesced in the decision to issue the unregistered notes. I find, therefore, on the basis of the evidence offered before this Court, defendant W. Dean Fitzwater was unaware that any claim might reasonably be asserted against him in his capacity of attorney as the result of his participation in the aforementioned decision until the Marion County action was filed. \* \* \*"[1]

[1] Because of the affirmative finding of fact by the trial court in this case, the question of burden of proof is not controlling. See, however, General Acc. Fire and Life v. Shasky, 266 Or 312, 321, 512 P2d 987 (1973). Cf. Bernard v. National Guaranty Ins. Co., 270 Or 827, 530 P2d 74 (1974).

In appealing from that finding plaintiff contends:

"* * * The lower court concluded that the insured was not shown to be under a duty to give notice because it was not shown that he was aware that an *action* for malpractice might be brought. All that is required is that the insured have notice of facts indicating that it is reasonable to expect that a malpractice *claim* may be asserted or that a suit may be filed. * * *"[2] (Emphasis added)

■ Upon reading the finding of fact by the trial court, as set forth above, we do not believe that it was confused by the distinction between the existence of a cause of action for malpractice and the reasonable expectation of a claim for malpractice. Indeed, the trial court expressly found that defendant was unaware that "any claim" for malpractice "might reasonably be asserted."

Plaintiff also argues that:

"* * * It is inconceivable that this potential claim would not *immediately* occur to any attorney that received the demand letter of March 19, 1970. A businessman-lawyer may wear two hats, but he knows that his layman associates will look to his lawyer's hat where there are *legal* foul-ups, as here. His neck was out and he knew it."

We might agree that under the facts of this case an attorney experienced in securities matters would have recognized that a claim or suit for legal mal-

---

[2] In support of that contention plaintiff argues, among other things:

"* * * Plaintiff charges the court with an error *of law* in that the court used the wrong yardstick to measure the evidence. * * *

"* * * The test is not existence of a *cause of action;* it is existence of an omission and a reasonable *expectation* of a malpractice *claim or suit* based thereon. * * *"

practice "might reasonably be expected." We also recognize that there may have been sufficient evidence to support a finding of fact that at some time in 1970 or early 1971 this defendant should have been aware of that possibility. Cf. *Falk v. Sul America Terrestres, supra.*

The question to be decided in this case, however, is whether the evidence was so strong as to be conclusive and to require a finding, *as a matter of law*, and to thereby nullify the finding of fact by this trial court to the contrary.

During the trial of this case it appears that counsel for plaintiff expressly agreed with a statement by the trial court that "the question I am ultimately going to have to decide" is "what a reasonable attorney would have done under like or similar circumstances." That was the question submitted by the plaintiff to the trial court for decision in this case. It is also a question which cannot be properly decided by "hindsight," but which must be decided by a review of the various events and other facts of which the defendant became "aware" and as of the time of the occurrence of such events or other facts.

■ The question of what a reasonable person would do under various circumstances, as in the usual negligence case, is usually a question of fact to be decided by the jury or, as in this case, by the trial court as the trier of the facts. This is ordinarily true even though the evidence in a case is uncontradicted, as in this case, if different inferences or conclusions may be reasonably drawn from such evidence.

■■ Thus, it is well established that even in a case in which the evidence is uncontradicted, the question

whether a person has acted reasonably becomes a question of law "when, and only when, from the facts, reasonable men can draw but one inference and that inference points unerringly" to the conclusion that the person has not acted as a reasonable person would have acted under those circumstances. See *Loibl v. Niemi,* 214 Or 172, 177, 327 P2d 786 (1958), and cases cited therein. See also *Troupe v. Ledward,* 238 Or 531, 535, 395 P2d 279 (1964), and *Rickard v. Ellis,* 230 Or 46, 55, 368 P2d 396 (1962), and cases cited therein. Although it may be said that this .case involves a question of "perception," rather than "conduct," as such, we believe that these same rules are applicable.

It may be contended that the language used by the trial court in this case in its findings of fact could have been more precise. We believe, however, that it is clear from its decision, taken as a whole, that what it found, in effect, was that although defendant was aware of facts "which might reasonably be expected to be the basis of a claim or suit" by holders of the notes against him and the other defendants in those cases *as directors* of the corporation, defendant was not aware of "any act or omission which might reasonably be expected to be the basis of a claim or suit" against him for malpractice *as an attorney* and that the trial court based that conclusion upon an inference from the fact that there was no evidence that the other directors had relied in any way upon his advice as an attorney.

Indeed, there was no evidence that any of the other directors had expressed to the defendant any dissatisfaction with his services as an attorney at any time, even after being sued. Neither was there

any evidence that any of the other directors had intimated in any way or at any time that a claim might be made against defendant for malpractice as an attorney.

Under these facts, we are not prepared to hold that the trial court in this case was required, as a matter of law, to find that a reasonable attorney must have realized that his conduct as an attorney for the corporation "might reasonably be expected to be the basis of a claim or suit" for malpractice as an attorney, particularly one made by one of the persons with whom he had served as a director of this small corporation. Cf. *Bernard v. National Guaranty Ins. Co., supra.*[9]

For these reasons, we affirm the judgment of the trial court.

---

[9] No contention has been made, either in the actions previously filed against defendant and the other directors or in this case, that defendant should have been aware that a claim based upon conduct in his "capacity as a lawyer" might be made not only by his fellow directors, but also by the purchasers of the unregistered securities. We therefore do not consider that question in this case. Cf. Adams v. American Western Securities, 265 Or 514, 529, 510 P2d 838 (1973), decided after defendant gave notice to plaintiff insurance company in this case on October 3, 1972.