Argued August 24, affirmed in part; reversed in part
and remanded for trial October 22, 1979

HAMILTON,
*Appellant,*
*v.*
STATE OF OREGON, et al
*Respondents.*

(No. CC-78-422, CA 13261)

601 P2d 882

[822]

William F. White, Portland, argued the cause for appellant.

Mary J. Deits, Salem, argued the cause for respondent State of Oregon. With her on the brief were James A. Redden, Attorney General, and Walter L. Barrie, Solicitor General, Salem.

Eugene H. Buckle, Portland, argued the cause for respondent City of Astoria, a municipal corporation. With him on the brief was Cosgrave, Kester, Crowe, Gidley & Lagesen, Portland.

Before Tanzer, Presiding Judge, and Thornton and Campbell, Judges.

CAMPBELL, J.

## CAMPBELL, J.

◼ Plaintiff, the owner of improved real property in the City of Astoria which was damaged by a landslide, appeals from a summary judgment entered for defendants. He contends that the trial court erred in granting defendants' motions for summary judgment, in refusing to allow him to file a second amended complaint, and in rejecting his attorney's affidavit and photographs in opposition to the motion for summary judgment.[1] We reverse in part and remand.

Defendant City of Astoria (City) owns in fee real property adjacent to plaintiff's property and under the highway approach to the Astoria-Megler Bridge. This property is a steep embankment on which the City maintains a sewer and manhole. Defendant State of Oregon (State) has an easement over this property. In the early morning hours of December 14, 1977, the manhole overflowed with water, allegedly precipitating the landslide which damaged plaintiff's property. Upon inspecting the manhole that morning, the city manager found that rocks ranging up to 18 inches in diameter were piled three feet deep in the four-foot-deep manhole, causing the overflow. After the rocks were removed, the manhole stopped overflowing and the water in the drainage system resumed its normal flow.

Plaintiff's first amended complaint charged defendants with negligence in the following respects:

---

[1] Defendant City of Astoria argues that plaintiff failed to set out assignments of error in its brief and, therefore, we should not consider the merits of plaintiff's appeal. Rule 7.19, Rules of Procedure of the Supreme Court and Court of Appeals. In his reply brief, plaintiff attempted to cure this defect. Further, the hearing on the motion for summary judgment was not recorded, and plaintiff directed us to the portions of the court file pertinent to the appeal. Since plaintiff's assignments are not of the type which we can consider only by searching the record for the proceedings complained of, we reach the merits of the appeal as a matter of discretion. *See generally Castor v. Erlandson*, 277 Or 147, 560 P2d 267 (1977).

In addition to the contentions set forth in the text, plaintiff also asserts that the trial court erred in certain other respects. We are not persuaded by his arguments on these points.

[823]

"That the State of Oregon and City of Astoria were negligent in permitting a large quantity of mud, dirt, rocks, water and debris from physically moving, sliding or falling from their property to and upon plaintiff's property in that:

"1. They failed to erect a suitable and sufficient retaining wall upon their property to contain their property and the contents thereof from moving, sliding or falling upon plaintiff's property;

"2. Failed to properly design and construct their highway bridge approach on their property so as to prevent their property and the contents thereof from moving, sliding or falling upon plaintiff's property;

"3. Failed to adequately maintain their storm drain whose access pipe is on their property above plaintiff's property;

"4. Failed to reasonably inspect their property and its pipes and drains to assure that such did not clog or become inoperative and overflow to cause damage to plaintiff's property."

The complaint also included a separate cause of action in trespass, and a cause of suit charging defendants with maintaining a nuisance and praying for the abatement of the nuisance and the erection of a retaining wall. In its answer the State admitted that certain materials slid onto plaintiff's property, but denied the allegations of negligence, trespass, nuisance, and damages. The City did not answer. Both defendants moved for summary judgment with supporting affidavits. Three days before the hearing on the motions for summary judgment, plaintiff served on defendants a second amended complaint, along with an affidavit by plaintiff's attorney in opposition to the motions for summary judgment. On the day of the hearing, plaintiff tendered to the court the second amended complaint, the affidavit, and six photographs of the area in question. The trial court rejected these items, and subsequently entered summary judgment for defendants.

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party

is entitled to judgment as a matter of law. ORS 18.105(3).

■ Plaintiff first argues that his complaint "alleged a clear case for the application of *res ipsa loquitur*," which the affidavits submitted by defendants and the admissions on file were insufficient to rebut. The doctrine is applicable only where the injury is caused by an agency or instrumentality within the exclusive control of defendant. *E.g., Brannon v. Wood,* 251 Or 349, 444 P2d 558 (1968). The affidavit of Dale F. Curry, city manager for the City of Astoria, stated, *inter alia,* "The manhole behind these houses had been plugged with large boulders ranging up to 18 inches in diameter by vandals causing the manhole to over-flow." The affidavit of Eldon Everton, district engineer for the Astoria district of the State Highway Department, stated, "On or about the early morning hours of December 14, 1977, unknown persons apparently placed rocks in a manhole on the sewer line within the fee belonging to the City of Astoria." Plaintiff did not offer an affidavit contradicting these statements.[2] Following the State's request for admissions, the City responded that (1) the manhole in controversy is the property of the City, and (2) it is the City's duty to maintain the manhole.

■ Since the State had no control over the manhole, *res ipsa loquitur* cannot apply against the State. We turn to the question of the application of that doctrine to the City.

In analogous situations, other jurisdictions have refused to apply *res ipsa loquitur.* For instance, in *Reich v. Salt Lake City Suburban Sanitary Dist. No. 1,* 29 Utah 2d 125, 506 P2d 53 (1973), a sewer line clogged, causing raw sewage to back up into plaintiffs'

---

[2] Although the statements in the affidavits concerning the intervention by "vandals" or "unknown persons" are not made "on personal knowledge," ORS 18.105(4), plaintiff apparently concedes in his brief that the rocks were placed in the storm sewer intentionally rather than through the operation of natural forces.

homes. The court, noting that the sewer system contained numerous unlocked manholes, found that defendant did not have "exclusive control" of the system and that, therefore, *res ipsa loquitur* did not apply. *Shipley v. City of Spearfish,* 235 NW2d 911 (S.D. 1975) involved a similar sewer backup. Again, the court noted that a passerby can gain access to the sewer system through unsecured manholes in public streets. The court further observed that on Halloween, manhole covers had been removed. For these and other reasons, the court held that defendant lacked exclusive control of the sewer system and that the trial court's instruction to the jury on *res ipsa loquitur* was improper. *See also, e.g., Consolidated Contractors, Inc. v. Wilcoxen,* 252 SW2d 429 (Ky 1952) (unknown persons had deliberately opened gate valve, flooding basement of building under construction—defendants had no exclusive control); *Wimpfheimer v. City of New York,* 184 App Div 494, 171 NYS 701 (1918) (connections with water main opened by unauthorized persons and improperly plugged—*res ipsa loquitur* inapplicable).

*Esberg Cigar Co. v. Portland,* 34 Or 282, 55 P 961 (1899), cited by plaintiff, is not to the contrary. There, the court applied *res ipsa loquitur* in a negligence action for damages to plaintiff's goods caused by the bursting of an underground water pipe. Unlike the present case, in *Esberg Cigar Co. v. Portland* there was no suggestion that anyone other than defendant had access to the section of pipe in question.

■ Although the City had the sole right to maintain the manhole, that right to control does not supply the exclusive control element of *res ipsa loquitur* where it could not be effectively exercised. *Freitag v. City of Montello,* 36 Wis 2d 409, 153 NW2d 505 (1967).

We conclude that the tampering with the manhole by unknown persons negates the element of control by the City necessary for the application of *res ipsa loquitur.*

[826]

■ Plaintiff next contends that genuine issues of material fact remain and, therefore, summary judgment is inappropriate. The first two allegations of negligence in plaintiff's amended complaint, quoted *supra* at 824, alleged defendants' negligent failure (1) to erect a retaining wall to prevent landslides from moving onto and damaging plaintiff's property and (2) to properly design and construct the highway bridge approach on their property so as to prevent landslides such as occurred. No material issue of fact exists pertinent to these allegations. The planning, design and construction of highways are discretionary functions, the negligent performance of which defendants are not liable for. ORS 30.265(3)(c); *Smith v. Cooper,* 256 Or 485, 475 P2d 78 (1970); *Gallison v. City of Portland,* 37 Or App 145, 586 P2d 393 (1978), *rev den* (1979). The trial court properly entered summary judgment for defendants as to these allegations.

■ The third and fourth allegations of negligence in the complaint charged defendants with failure to adequately maintain and inspect the storm drain.[3] Since the State had neither the right nor duty to maintain or inspect the City's storm drain, plaintiff cannot recover against the State under these allegations.

We first address the question of the City's alleged negligent failure to maintain, specifically whether the City was negligent in failing to prevent unauthorized persons from tampering with the manhole. The affidavit of Raymond Ala, the assistant city engineer for the City of Astoria, submitted by the City in support of its motion for summary judgment, stated in pertinent part:

"1. I am the assistant city engineer for the City of Astoria and have been employed by the City for the past 28 years;

"2. I have investigated and reviewed the City's file material pertaining to this claim and I make this affidavit based upon personal knowledge;

_____

[3] With respect to these allegations, neither defendant asserted immunity.

[827]

"3. The sewer in question was installed in 1919. I am aware of no problems with this sewer and the particular manhole in question overflowing at any time prior to December 14, 1977, the day of this incident;

"4. The city first became aware of the overflow at approximately 7:00 a.m. on December 14, 1977;

"5. The official U.S. Weather Bureau Service reports that the rain fall for December, 1975 was 15.66 inches. December 2, 1977, 2.62 inches of rain fell; on December 10, 1977, 1.99 inches; on December 12, 1977, 1.29 inches; on December 13, 1977, 1.44 inches; on December 14, 1977, 1.07 inches; and on December 15, 1977, 1.32 inches of rain fell.

"6. There has been no problem of flooding of this particular sewer or manhole since the incident complained of in plaintiff's complaint."

The Curry affidavit referred to *supra* at 825 stated:

"1. I am the City Manager for the City of Astoria;

"2. On the morning of December 14, 1977, I was informed that a sewer manhole was overflowing behind the houses located at 347 and 349 West Marine Drive;

"3. The manhole behind these houses had been plugged with large boulders ranging up to 18 inches in diameter by vandals causing the manhole to overflow. The 4 foot deep manhole was piled 3 feet high with the rocks;

"4. I helped remove the rocks from the manhole, after the removal of which the manhole stopped overflowing and the water in the sewer drainage system continued to flow in its normal manner;

"5. I am not aware of this manhole or sewer overflowing at any time prior to this incident or any time since this incident;

"6. The manhole in question was bolted shut after this incident to prevent any future vandalism and resulting water overflow."

■ Ordinarily, the issue of negligence is a question of fact to be decided by a jury. *Oregon Auto Ins. Co. v. Fitzwater,* 271 Or 249, 531 P2d 894 (1975). The court will withdraw the issue from the jury only where it

can say that the actor's conduct clearly falls either above or below the community's standard of reasonable conduct. *E.g., Stewart v. Jefferson Plywood Co.*, 255 Or 603, 469 P2d 783 (1970).

■ The question under discussion is governed by the principles stated in Restatement (Second) of Torts § § 302B, 448, and 449 (1965):

"§ 302 B. An act or an omission may be negligent if the actor realizes or should realize that it involves an unreasonable risk of harm to another through the conduct of the other or a third person which is intended to cause harm, even though such conduct is criminal."

"§ 448. The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime."

"§ 449. If the likelihood that a third person may act in a particular manner is the hazard or one of the hazards which makes the actor negligent, such an act whether innocent, negligent, intentionally tortious, or criminal does not prevent the actor from being liable for harm caused thereby."

Comment d to Section 302 B states:

"* * * Even where there is a recognizable possibility of the intentional interference, the possibility may be so slight, or there may be so slight a risk of foreseeable harm to another as a result of the interference, that a reasonable man in the position of the actor would disregard it."

The City's affidavits disclose no facts from which the City should have realized the likelihood that unknown persons would intentionally obstruct the manhole. To the contrary, the affiants deny any knowledge of problems with the particular manhole since the installation of the sewer in 1919. Plaintiff was not entitled to

rely upon the allegations in his complaint to controvert the affidavits. Rather, it was plaintiff's duty to produce counter-affidavits to preserve the factual issue of whether the City should have realized the likelihood of vandalism and taken measures to secure the manhole. In *Pelege v. Chrysler*, 278 Or 223, 227 n.2, 563 P2d 701 (1977), the court stated:

> "In *Doff v. Brunswick Corporation*, 372 F2d 801,805 (1966), *cert denied* 389 US 820 (1967), the identical language contained in Federal Rules of Civil Procedure, Rule 56, 28 USCA, from which ORS 18.105 was taken, was interpreted as follows:
>
> > 'Where, on the basis of the materials presented by his affidavits, the moving party, if at trial, would be entitled to a directed verdict unless contradicted, it rests upon the opposing party at least to specify some evidence to show that such contradiction is possible. [Citations omitted.] The burden of coming forward with specific controverting facts shifts to the opponent. [Citations omitted.] It is his duty to expose the existence of a genuine issue which will prevent the trial from being a useless formality. * * *'
>
> "See also, *First Nat. Bank v. Cities Service*, 391 US 253, 288, 88 S Ct 1575, 20 L Ed 2d 569 (1968); *Town House, Inc. v. Paulino*, 381 F2d 811, 814 (9th Cir 1967)."[4]

*See* 6 Moore's Federal Practice Para. 56.11[3] at 56-243 (2d Ed. 1976). Plaintiff neither introduced such affidavits nor introduced an affidavit stating reasons why he could not "present by affidavit facts essential to justify his opposition" to the motion for summary judgment. ORS ORS 18.105(5). We hold that the entry of summary judgment for the City on the issue of prevention of vandalism was proper.

Still remaining is the issue of whether the City was negligent in failing to discover the obstruction in the

---

[4] In *First Nat. Bank v. Cities Service Co.*, 391 US 253, 290, 88 S Ct 1575, 20 L Ed 2d 569 (1968), the Court stated that, in the face of a properly supported motion for summary judgment, the plaintiffs could not "get to a jury on the basis of the allegations in their complaints, coupled with the hope that something can be developed at trial in the way of evidence to support those allegations * * * ."

storm drain and prevent the overflow. A municipality is bound to use reasonable diligence and care to keep its drains and sewers in good repair. *Harbison et ux v. City of Hillsboro*, 103 Or 257, 204 P 613 (1922); *City of Tucson v. Hughes*, 23 Ariz App 350, 533 P2d 561 (1975); *City of Pascagoula v. Rayburn*, 320 So2d 378 (Miss 1975); *Steiner v. City of Lebanon*, 40 Ohio App 2d 219, 318 NE2d 853 (1973); 18 McQuillin, Municipal Corporations § 53.118 at 450 (3d Ed revised 1977). The municipality has a duty of reasonable inspection, and is chargeable with notice of what a reasonable inspection would disclose. *City of Tucson v. Hughes, supra; Floyd v. City of Butte*, 412 P2d 823 (Mont 1966); *Steiner v. City of Lebanon, supra.*

From the City's affidavits we take the following to be true. The sewer was installed in 1919. The City's files reveal no problems with the particular manhole any time prior to December 14, 1977, the date of the overflow. The City first became aware of the overflow at approximately 7:00 a.m. on the day of the overflow. The official rainfall statistics for December 1977 were as follows: December 2, 2.62 inches; December 10, 1.99 inches; December 12, 1.29 inches; December 13, 1.44 inches; December 14, 1.07 inches; and December 15, 1.32 inches. Since the date of the overflow, the sewer and manhole involved here have not overflowed.

The City's affidavits did not allege the type or frequency of inspection to which the sewer was subject, or indeed whether the sewer had ever been routinely inspected for obstructions in its 58 years of existence before the overflow. Further, from the complaint and the affidavits it is impossible to determine for what length of time the sewer had been obstructed prior to the overflow, a fact which is critical to the determination of the efficacy of a reasonable inspection to disclose the obstruction.

■ We find that, as to the question of the City's failure to inspect the sewer, genuine issues of material fact remain and, therefore, entry of summary judgment for the City was improper.

■ Since the State's conduct was neither negligent, reckless, intentional, or ultrahazardous, plaintiff cannot recover against the State under his action for trespass, *Hudson v. Peavey Oil Company*, 279 Or 3, 566 P2d 175 (1977), or his suit to abate a nuisance, *Phillips Ranch, Inc. v. Banta*, 273 Or 784, 543 P2d 1035 (1975).

■ ■Plaintiff next contends that the trial court erred in rejecting his second amended complaint. As noted above, on the day of the hearing, plaintiff tendered to the court a second amended complaint. He had served the complaint on defendants three days previously. A trial court's decision whether to allow a motion to amend a pleading is entirely within the court's discretion, and will be reversed only for an abuse of that discretion. *E.g., Baker v. Brookmead Dairy, Inc. et al*, 230 Or 384, 370 P2d 235 (1962). In the present case, the second amended complaint, which significantly changed plaintiff's theory of the case, was served nearly three months after his first amended complaint, and merely three days before the scheduled date of the hearing. Plaintiff did not support his motion to amend with an affidavit in explanation of the delay. We conclude that the trial court did not abuse its discretion in rejecting the second amended complaint.

■ Finally, plaintiff argues that the trial court erred in rejecting his attorney's affidavit and photographs in opposition to the motion for summary judgment. We disagree. Nothing in the affidavit or photographs pertained to any issue of fact cognizable under the allegations of plaintiff's first amended complaint.

In summary, the trial court did not err in entering summary judgment for the State on all issues, and for the City on the first three allegations of negligence in plaintiff's first amended complaint. Since material issues of fact remain concerning the allegation of the City's negligent failure to inspect, we remand for trial on that issue, as well as plaintiff's action in trespass

[832]

and suit to abate a nuisance insofar as they pertain to the City's alleged negligent failure to inspect.

Affirmed in part; reversed in part and remanded for trial.