## DAVENPORT et al,
*Appellants,*

*v.*

## VLACH et al,
*Respondents.*

### (83-257-E; CA A34025)

726 P2d 941

William H. Ferguson, Medford, argued the cause for appellants. With him on the briefs were Daniel S. Ferguson and Grant, Ferguson, Carter, P.C., Medford.

Walter L. Cauble, Grants Pass, argued the cause for respondents Eugene H. Vlach and Shirley M. Vlach. With him on the brief was Schultz, Salisbury, Cauble & Medley, Grants Pass.

Daniel F. Hughes, Grants Pass, argued the cause for respondents Elizabeth J. King and Claudell King. With him on the brief was Brown, Hughes, Bird & Lane, Grants Pass.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

WARDEN, J.

**WARDEN, J.**

Plaintiffs filed a complaint seeking rescission of their purchase of defendants Vlachs' real property on the basis of fraud. In the alternative, they sought damages for misrepresentation by the Vlachs' real estate agents, defendants King. The Vlachs counterclaimed for foreclosure of the trust deed. The parties agreed to bifurcate trial of the claims for rescission and for damages. After a trial to the court, judgment was entered dismissing plaintiffs' complaint for rescission and foreclosing the trust deed. We affirm.

Plaintiffs' claim arose from their 1981 purchase of a two-acre parcel and a dwelling. The Vlachs had listed the property with the Kings. Plaintiffs dealt primarily with Mrs. King, who had assisted plaintiff Davenport in previous real estate transactions. The listing agreement stated that the property had the "potential" of being "split." After signing the earnest money agreement in late October, 1981, but before the December 2 closing, plaintiffs and the Kings discussed the possibility of entering into a joint venture to subdivide the property. Mrs. King gave plaintiffs an estimate of approximately $32,000 to develop the subdivision. Plaintiffs agreed to lease the dwelling and a portion of the property to third parties, the Walkers, and to give them an option to purchase the leased premises.

Before the sale closed, plaintiffs made independent inquiry of several parties about subdividing the property. They spoke with the City Planning Department, two paving contractors and an experienced engineer, who gave them an "estimate" of approximately $90,000 in costs. In addition, plaintiffs and Mrs. King met with the attorney who was representing plaintiffs in the real estate transaction. The attorney questioned the low figures provided by Mrs. King. Despite the estimate of the engineer and the doubts expressed by their attorney, plaintiffs continued to rely on the advice of Mrs. King and proceeded with the purchase.

The attorney testified that, after the sale had closed, he met with plaintiffs on January 20, 1982, at which time they told him that they wanted to "back out" of the sale and get their money back. At that meeting the attorney explained the available legal alternatives, including keeping the property, selling part of it to the Walkers and rescinding the purchase

from the Vlachs. On March 12, 1982, the attorney again met with plaintiffs, and they discussed the rental payments being made by the Walkers. That meeting resulted in the attorney writing a letter on behalf of plaintiffs to the Walkers, asking them whether they were still interested in purchasing part of the property. The Walkers responded that they were.

Plaintiffs continued to make payments on the property during 1982. They had made a $10,000 down payment at the time of closing. In March, two months after their attorney had explained the option of rescission, they made a balloon payment. Also, the monthly rent of $500, paid by the Walkers, was applied to the contract payments. Throughout 1982, plaintiffs continued to discuss with Mrs. King possible ways of selling the property. In December, 1982, plaintiffs secured from the engineer a formal subdivision cost report showing total expenses of over $85,000. In late February, 1983, they brought this action, claiming that, but for the fraudulent misrepresentations of Mrs. King as to the costs of subdividing, they would never have purchased the property.

■ Plaintiffs assign as error the trial court's ruling that, after discovering the alleged misrepresentations, plaintiffs had failed to act promptly and had therefore waived any rights that they may have had to rescind.[1] A party seeking to rescind a contract must act promptly after the discovery of fraud. *See Edwards v. Wilcoxen,* 278 Or 91, 95, 562 P2d 1207 (1977). What constitutes a prompt rescission is determined by the facts and circumstances of each case; however, a party

> "cannot retain the fruits of the contract awaiting future developments to determine whether it will be more profitable for him to affirm or disaffirm it. Any delay on his part, especially his remaining in possession of the property received under the contract and dealing with it as his own will be evidence of his intention to affirm the contract." *Schuler et ux v. Humphrey et ux,* 198 Or 458, 480, 257 P2d 865 (1953).

---

[1] Plaintiffs failed to comply with ORAP 7.19, which requires that assignments of error must be specific and must set out verbatim the pertinent portions of the record. We consider plaintiffs' assignment of error regarding waiver only because it is evident from the face of the record that plaintiffs are challenging the trial court's fourth conclusion of law. *See Hamilton v. State,* 42 Or App 821, 823 n 1, 601 P2d 882 (1979).

Although we do not reach plaintiffs' other assignments of error because of our decision, two of them are not evident on the face of the record. We will not search the record.

■ Plaintiffs argue that they could not have waived their right to rescind, because they did not have complete knowledge of the fraud until they received the written estimate from the engineer in December, 1982. We disagree. From the start of the transaction, plaintiffs were on notice that the representations made by Mrs. King were suspect, at least.[2] Furthermore, they were advised soon after closing as to the availability of rescission but they chose to abide by the contract's terms for almost a year while searching for alternatives to subdividing. Plaintiffs' actions through the year are consistent only with an intent to affirm the contract, and their attempt to rescind is too late. *See State Farm Fire v. Sevier,* 272 Or 278, 537 P2d 88 (1975). On *de novo* review, we hold that plaintiffs waived their right to rescind.

Affirmed.

---

[2] *Compare Brown et ux v. Hassenstab et ux,* 212 Or 246, 319 P2d 929 (1957). The sellers there misrepresented the income of a movie theatre, and the purchasers were unable to ascertain the true income until several months later, after they had operated the business and had finally succeeded in seeing the sellers' books and income tax returns. The court found that the falsity of the sellers' representations was not discovered until that time.